CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 20 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

UNITED STATES OF AMERICA, )
) Case No. 7:16-cr-30026
)
v. )
)
MICHAEL JONES, et al., )
) By: Michael F. Urbanski
Defendants. ) United States District Judge

## MEMORANDUM OPINION

This matter comes before the court on motions challenging venue. Michael Dove and Terrance Brown request the court to dismiss Counts Three through Eight of the indictment for improper venue pursuant to Rule 12(b)(3)(A)(i) of the Federal Rules of Criminal Procedure. ECF Nos. 277, 278. Similarly, Michael Jones moves to sever the charges against him from Counts Three through Eight, arguing venue for Counts Three through Eight is defective. ECF No. 281. In the event the court determines venue properly lies in this district, Brown moves in the alternative to transfer Counts Three, Five, Six, and Eight to the Eastern District of Virginia pursuant to Rule 21(b) for convenience.[1] ECF No. 278. Defendants Michael Jones and Shawn Smith join in the motion to transfer to the Eastern District under Rule 21(b).[2] ECF Nos. 366, 376.

---

[1] The Court addressed the improper venue motions at a May 11, 2017 hearing and the transfer motions at a June 16, 2017 hearing. Dove also filed a motion to transfer pursuant to Rule 21(b), ECF No. 344, but made an oral motion to withdraw his transfer request at the June 16 hearing. The court will grant Dove's motion to withdraw. ECF No. 292.

[2] The court refers to defendant Michael Jones by his first and last name to avoid any confusion between him and other defendants in this case with the last name Jones.

For the reasons set forth below, the court will **DENY** Dove's and Brown's motions to dismiss for improper venue, **DENY** Michael Jones' motion to sever, and **DENY** Brown's, Michael Jones', and Smith's motions to transfer. The entirety of this case will stay in this district and proceed to trial on September 11, 2017.

I.

This case involves alleged gang activity by members and associates of the Mad Stone Bloods ("MSB"). Count One of the indictment charges eight defendants with conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act (RICO) in violation of 18 U.S.C. § 1962(d). Count Two charges thirteen defendants, including the eight charged in Count One, with drug conspiracy in violation of 21 U.S.C. § 846. Dove and Brown, in addition to facing the RICO and drug conspiracy counts, are charged with violent crime and firearm offenses in Counts Three through Eight. Specifically, Brown and Dove are both named in Counts Three and Six, which charge assault in aid of racketeering in violation of 18 U.S.C. § 1959(a)(3). Counts Four and Seven charge Dove with use of a firearm during a crime of violence under 18 U.S.C. § 924(c), and Counts Five and Eight charge Brown with § 924(c) violations.

Dove and Brown argue that Counts Three through Eight of the indictment must be dismissed due to improper venue. The indictment states that the conduct underlying those counts occurred "in the Western District of Virginia, Eastern District of Virginia and elsewhere." Indictment, ECF No. 19, ¶¶ 25, 27, 29, 32, 34, 36. At a March 23, 2017 hearing, Brown moved under Rule 7(f) for a bill of particulars identifying the specific location of the conduct alleged in Counts Three through Eight in effort to determine whether a pretrial

2

motion challenging venue would be appropriate. The court granted Brown's Rule 7(f) motion and the government filed such a bill on April 14, 2017. ECF No. 275. Brown and Dove, in the instant motions to dismiss, argue that the facts set forth in the bill of particulars fail to satisfy the venue requirements for Counts Three through Eight.[3]

The bill of particulars describes two violent episodes that underlie the counts at issue. First, according to the bill, Dove and Brown robbed customers at the Ink Junkeez tattoo parlor in Norfolk, Virginia on or about July 26, 2013. The pair allegedly brandished firearms and took money and personal items, including a woman's purse, credit cards, $50 in cash, and a $150 money order. The government asserts that Dove and Brown committed this robbery for the purpose of maintaining or increasing their positions in MSB, thus providing the basis for the § 1959(a) charge in Count Three. The alleged use of firearms during the Ink Junkeez robbery supports the § 924(c) charges in Counts Four and Five.[4]

The second violent incident outlined in the bill of particulars supports Counts Six, Seven, and Eight. As the government alleges in the bill, Dove and Brown shot victim O.J. numerous times during the course of an attempted robbery near 1552 Hemlock Street, Norfolk, Virginia on or about August 1, 2013. The victim, however, did not have money or

---

[3] The court notes that pretrial motions challenging venue are "ordinarily limited to the allegations contained in the indictment." United States v. Engle, 676 F.3d 405, 415 (4th Cir. 2012). However, a "district court 'may consider a pretrial motion to dismiss an indictment where the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts.'" Id. at 416 n.7 (quoting United States v. Weaver, 659 F.3d 353, 355 n.* (4th Cir. 2011)). Therefore, the court will consider the facts proffered by the government in the bill of particulars in passing on the instant motions to dismiss.

[4] Although the bill of particulars states that the defendants "brandished" firearms during the Ink Junkeez robbery, ECF No. 275, at 3 ¶¶ 4, 5, Counts Four and Five of the indictment charge Dove and Brown under § 924(c)(1)(A)(i), which only requires the "use" or "carrying" of a firearm during a crime of violence and carries a five-year mandatory minimum sentence. In contrast, § 924(c)(1)(A)(ii), which the defendants are not charged under, applies to brandishing a firearm and carries a seven-year mandatory minimum sentence.

3

personal items in his possession to allow Dove and Brown to complete the robbery. The government asserts Brown and Dove attempted to rob O.J. for the purpose of furthering their positions in MSB, thus amounting to a § 1959(a) offense as alleged in Count Six. The discharge of the weapons supports the § 924(c) charges in Counts Seven and Eight.

Dove and Brown argue that going to trial for Counts Three through Eight in the Western District of Virginia would violate their right to be tried where the crimes were committed. See U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; Fed. R. Crim. P. 18.[5] They claim that the conduct giving rise to those charges occurred entirely in Norfolk, which is located in the Eastern District of Virginia. 28 U.S.C. § 127(a). The government argues that venue is proper for § 1959(a) violations "in any district where the [racketeering] enterprise *conducted its affairs*, as well as where the underlying crime of violence occurred." Government's Resp. in Opp'n to Mot. for Bill of Particulars, ECF No. 198, at 4 (emphasis original).[6] The government alleges that MSB members conducted numerous criminal

---

[5] Although the motions to dismiss challenge venue for Counts Three through Eight, the primary focus in resolving these motions is whether venue is proper for Counts Three and Six, which are the § 1959(a) charges. If venue is proper for the § 1959(a) charges, then venue will also be proper for the § 924(c) charges in Counts Four, Five, Seven, and Eight. See United States v. Umaña, 750 F.3d 320, 336 (4th Cir. 2014) ("Venue for § 924(c) prosecutions is appropriate wherever the underlying crime of violence took place."). As noted, the crime of violence underlying the § 924(c) charges in Counts Four and Five is the § 1959(a) charge in Count Three; likewise, the crime of violence underlying Counts Seven and Eight is the § 1959(a) charge in Count Six. Therefore, if venue is proper for the § 1959(a) charges in this case, the court must deny Dove's and Brown's motions to dismiss the § 1959(a) charges as well as the § 924(c) charges in Counts Three through Eight of the indictment.

[6] The government's briefing on this venue issue is virtually nonexistent. In response to the instant motions to dismiss, the government merely "rests on its arguments previously stated in its response to the Bill of Particulars." ECF No. 290, at 1. The bill of particulars, however, proffers facts and contains no legal arguments or citation of case law. In its response in opposition to a motion for a bill of particulars, the government dedicated a paragraph to its view that venue is proper in this district (the crux of which is quoted above). ECF No. 198, at 3-4. While not directly addressing the instant motions, the court considers the government's arguments set forth in ECF No. 198, at 3-4,

4

activities in the Western District, thus satisfying venue here. The parties' disagreement primarily centers on differing views of United States v. Umaña, 750 F.3d 320 (4th Cir. 2014), in which the Fourth Circuit examined proper venue for § 1959(a) prosecutions. As explained below, Umaña, together with other controlling authority, dictate that the government's allegations are sufficient for venue to properly lie in the Western District of Virginia for Counts Three through Eight of the indictment.

## II.

Pretrial motions challenging venue cannot rest on factual determinations. "A district court may dismiss an indictment under Rule 12 where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." United States v. Engle, 676 F.3d 405, 415 (4th Cir. 2012) (citations and quotations omitted). Therefore, the court takes the allegations in the indictment and bill of particulars as true and may only dismiss the § 1959(a) charges if those allegations do not establish venue. If, at the close of evidence, a defendant raises a genuine issue of material fact with regard to proper venue, the court must instruct the jury regarding the government's burden to prove that venue is proper in this district by a preponderance of the evidence. Engle, 676 F.3d at 415. But given the procedural posture of Dove's and Brown's instant motions, the court's inquiry is limited to whether "there is an infirmity of law in the prosecution." Id.

---

in resolving Dove and Brown's venue objections. And of course, the court will undertake its independent obligation to apply the law to the circumstances of this case.

5

## A.

Article III of the Constitution mandates that "The Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. The Sixth Amendment further requires that criminal defendants be tried "by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. Federal Rule of Criminal Procedure 18 implements these constitutional venue rights: "[T]he government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18.

"The federal venue requirement protects criminal defendants from the inconvenience and prejudice of prosecution in a far-flung district bearing no connection to their offenses." Engle, 676 F.3d at 412 (citation and quotation omitted); see also United States v. Cabrales, 524 U.S. 1, 9 (1998) ("[T]he venue requirement is principally a protection for the defendant."). These constitutional provisions also "promote thorough factfinding" and are "best served by holding trial where the witnesses and relevant circumstances surrounding the contested issues are located." United States v. Clines, 958 F.2d 578, 583-84 (4th Cir. 1992).

"While the venue rule—trial in the district where the crime is committed—seems straightforward, the place of the crime can be difficult to determine." United States v. Bowens, 224 F.3d 302, 308 (4th Cir. 2000). Absent an express direction from Congress otherwise, "the site of a charged offense must be determined from the nature of the crime alleged and the location of the act or acts constituting it." Cabrales, 524 U.S. at 5 (citations and quotations omitted). "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of

6

the commission of the criminal acts." United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999). In the Fourth Circuit, "the conduct constituting the offense is limited to essential conduct elements" of the offense. Bowens, 224 F.3d at 312. Elements that are not conduct elements are "circumstance elements," which, "even if essential, are of no moment to a venue determination." United States v. Oceanpro Indus., Ltd., 674 F.3d 323, 328 (4th Cir. 2012) (citations and quotations omitted).

**B.**

The Fourth Circuit in Umaña examined proper venue for § 1959(a) offenses and held that venue properly lies not only where the violent crime was committed but also where the defendant conducted an act showing that the purpose of the crime was to further his position in a RICO enterprise. 750 F.3d at 333-36. The defendant in Umaña was a member of Mara Salvatrucha, which is commonly known as MS–13. At the direction of gang leaders in New York, Umaña travelled from Los Angeles, California to Charlotte, North Carolina to "take control" and teach the North Carolina members "how to run a gang." Id. at 331. After several months of conducting meetings and gang activities in Charlotte, Umaña drove to Greensboro, North Carolina, where he killed two brothers who he believed had disrespected MS–13. Immediately following the double murder, Umaña travelled from Greensboro, which is located in the Middle District of North Carolina, back to Charlotte, which is located in the Western District of the state. While in Charlotte, he boasted to other gang members about the murders, saying that the victims "had insulted MS–13 and that he had killed them for his fellow gang members." Id. at 336.

7

Much like Dove and Brown, Umaña was charged with a RICO offense under § 1962, two counts of violent crimes in aid of racketeering under § 1959(a), and corresponding firearms offenses under § 924(c). He was tried and convicted in Charlotte for the murders he committed in Greensboro. On appeal, Umaña argued that venue was improper for the § 1959(a) offenses in Charlotte because the murders took place in a district different than where he faced trial. In accordance with the framework governing venue outlined above, the Fourth Circuit addressed Umaña's arguments by first identifying the elements of a § 1959(a) offense:

> (1) that there was an enterprise engaged in racketeering activity;
> (2) that the enterprise's activities affected interstate commerce;
> (3) that the defendant committed [a violent crime]; and
> (4) that the defendant, in committing [the violent crime], acted in response to payment or a promise of payment by the enterprise or "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise."

Id. at 334–35.[7] Umaña argued that the only conduct element of a § 1959(a) offense is the commission of the violent crime. The Fourth Circuit disagreed.

In rejecting Umaña's position, the Court held that not only the third element, the commission of the violent crime, but also the fourth element—"for the purpose of ... maintaining or increasing position in an enterprise," or the "purpose" element—is a conduct element of a § 1959(a) offense. The Court reasoned that "a physical manifestation of purpose is necessary to ensure that the act is actually carried out to further the enterprise's goals" and that the purpose element "requires a manifest quid pro quo between the member

---

[7] Umaña was charged under § 1959(a)(1) for murder in aid of racketeering. Dove and Brown are charged under § 1959(a)(3) for assault in aid of racketeering.

8

and the gang." Id. at 335. "At bottom, we hold that § 1959(a)(1) includes as an element an objective, physical act that links the defendant with the enterprise with respect to the underlying violent crime and that this element is a conduct element supporting venue." Id.

Having determined that the purpose element of a § 1959(a) offense requires a physical act, the Court had little trouble identifying Umaña's actions in Charlotte that showed his purpose in committing the crimes. Most notably, Umaña travelled back to Charlotte immediately after the murders and boasted to his fellow gang members about his crimes, demonstrating that he committed the murders for the purpose of furthering his position in MS–13. Id. at 335-36. In light of the defendant's conduct related to the murders in the Western District of North Carolina, the Umaña court held venue for the § 1959(a) offenses and the corresponding § 924(c) offenses was proper in that district.

This case is more difficult than Umaña. The government does not allege that either Dove or Brown ever visited the Western District of Virginia, much less travelled to this district to engage in activity related to the Ink Junkeez robbery or the O.J. shooting. Therefore, the issue is whether a defendant charged under § 1959(a) must have been physically present in the district in which he faces trial when he engaged in conduct satisfying the purpose element of such an offense.[8] The Court in Umaña did not have to reach this issue given the defendant's conduct in the district in which he was tried.

---

[8] The government's contention that Dove and Brown's membership in MSB, an enterprise that allegedly conducted affairs in the Western District of Virginia, satisfies venue for the § 1959(a) charges is misplaced. In essence, the government argues that the first element of a § 1959(a) offense—that there was an enterprise engaged in racketeering activity—qualifies as a conduct element. The mere existence of a RICO enterprise, however, does not require proof of any conduct on behalf of a defendant charged under § 1959(a). Therefore, a § 1959(a) offense cannot be brought wherever the gang conducted its affairs. See infra note 9. In support of its broad venue theory, the

9

Elsewhere, however, the Fourth Circuit has noted that the "inquiry into the place of the crime may yield more than one appropriate venue, or even a venue in which the defendant has never set foot." Bowens, 224 F.3d at 309 (citing 18 U.S.C. § 3237(a), the continuing offense venue statute); cf. United States v. Johnson, 323 U.S. 273, 275 (1944) ("By utilizing the doctrine of a continuing offense, Congress may, to be sure, provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates."). The continuing offense doctrine applies most broadly where "Congress defines the essential conduct elements of a crime in terms of their particular effects." Bowens, 224 F.3d at 313. In such a case, "venue will be proper where those proscribed effects are felt." Id.

In Bowens, the Fourth Circuit examined whether harboring a fugitive in violation of 18 U.S.C. § 1071 triggers such an effects test. Bowens was convicted in the Eastern District of Virginia, where the government had issued arrest warrants for the fugitives who he concealed. Bowens argued on appeal that venue was improper because he never travelled into Virginia's Eastern District while harboring the fugitives. The government argued in response that venue for a § 1071 prosecution should be proper in the district where the arrest warrant was issued, i.e., where the effects of the criminal conduct were felt. The

---

government cites the Second Circuit's decision in United States v. Saavedra, 223 F.3d 85 (2d Cir. 2000), which held "that § 1959 defines a continuing offense" that can be tried in any district with which the defendant had "substantial contacts" in relation to the violent crime. Saavedra, 223 F.3d at 90-94 (applying a four-factor substantial contacts test). However, the Fourth Circuit in Umaña did not discuss or even cite Saavedra despite the fact that the Second Circuit's opinion in that case provided the only substantive examination of venue for § 1959(a) prosecutions that a federal Court of Appeals had conducted prior to the decision in Umaña. The court finds Umaña's silence on Saavedra instructive, and will similarly decline to adhere to the Second Circuit's guidance on these issues. Cf. United States v. Jefferson, 674 F.3d 332, 369 n.48 (4th Cir. 2012), as amended (Mar. 29, 2012) (rejecting a "substantial contacts test" for criminal venue as "run[ing] counter to the Constitution and Rule 18").

10

Fourth Circuit identified the only conduct element of a § 1071 offense as the act of "harboring or concealing a person," and declined to apply the effects test because the element "is defined in the statute without reference to its effects." Id. 313-14. Therefore, venue in the Eastern District of Virginia was improper for Bowen's § 1071 offenses.

By contrast, the Fourth Circuit held in United States v. Oceanpro Industries, Ltd., 674 F.3d 323 (4th Cir. 2012), that the effects test does apply to the crime of giving false statements to federal law enforcement in violation of 18 U.S.C. § 1001. In Oceanpro, an employee of a seafood wholesaler located in Washington, D.C. made false statements to federal investigators in relation to a Maryland-based investigation. Despite having made the statements in Washington, the employee was tried in Maryland. The Fourth Circuit held that venue was proper in Maryland because "the essential conduct constituting the [§ 1001] offense inherently references the effects of that conduct." Oceanpro, 674 F.3d at 329. The Court observed that Congress "defined the effects in § 1001 to include the element of materiality. And in this case, proving materiality necessarily requires evidence of the existence of the federal investigation in Maryland and the potential effects of [the employee's] statement on that investigation." Id. Unlike the harboring element at issue in Bowens, the materiality prong a § 1001 offense indicates that the crime "continu[es] into the district in which the effects of the false statement are felt." Id. at 330 (quoting United States v. Salinas, 373 F.3d 161, 167 (1st Cir.2004)).

In short, Umaña identified the purpose element of a § 1959(a) offense as a conduct element, but did not have to decide whether a defendant's physical act satisfying the purpose element must have occurred in the judicial district in which the defendant is tried. Oceanpro

11

and Bowens teach that a defendant's presence in a district is not required if the statute at issue defines a conduct element in terms of its effects and those effects were felt in the district where the proceedings take place. If § 1959(a) triggers the effects test outlined in Oceanpro and Bowens, and the government sufficiently alleges that the effects of the actions satisfying a § 1959(a) conduct element were felt in the Western District of Virginia, then the court cannot dismiss Counts Three through Eight for improper venue.

### C.

In applying the forgoing principles to this case, it is clear that the purpose element of a § 1959(a) offense "inherently references the effects of that conduct." Oceanpro, 674 F.3d at 329. At trial, the government must prove that Dove and Brown engaged in objective, physical acts showing that they committed the Ink Junkeez robbery and the O.J. shooting "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise." 18 U.S.C. § 1959(a); Umaña, 750 F.3d at 335. The purpose element defines the effects of a § 1959(a) offense to include influencing the decisions of gang leaders with authority over membership and promotions. In other words, proving the § 1959(a) offenses in this case necessarily requires evidence of the potential effects of Dove and Brown's conduct on the decisions of MSB leaders who grant membership to and promotions within the gang. See Oceanpro, 674 F.3d at 329 (proving material false statement "necessarily requires evidence of the existence of the federal investigation in Maryland and the potential effects of [the employee's] statement on that investigation").

At this procedural stage, the government has alleged sufficient facts to satisfy the venue requirements for Counts Three through Eight of the indictment. The government

12

alleges that the top leader of MSB in Virginia, who is known as the Chairman, as well as other high-ranking gang leaders, resided in prisons in the Western District of Virginia at the time Dove and Brown committed the violent crimes in Norfolk. ECF No. 275, at 6. Those leaders controlled MSB activities on both the street and in the prison systems, according to the government. Id. In fact, the indictment alleges that the "Chairman is the senior decision-maker for all MSB matters in Virginia, including gang-related acts of violence, … leadership positions/promotions, recruitment, organization and other gang-related activity." ECF No. 19, at ¶ 2(c). The government further alleges that Nicholas Johnson, "the official MSB bookkeeper/record keeper," resided in the Western District when Dove and Brown assaulted O.J. and robbed the tattoo parlor. ECF No. 275, at 6. Johnson's responsibilities included "maintaining the official roster of MSB membership in Virginia." Id. And most importantly, the government alleges that Dove and Brown committed the violent acts charged in Counts Three through Eight for the purpose of furthering their positions in the gang. ECF No. 19, at ¶¶ 25, 32.

Because the court must take each of these allegations as true, Engle, 676 F.3d at 415, the court cannot dismiss Dove's and Brown's § 1959(a) charges for improper venue. Section 1959(a) defines a conduct element—the purpose element—in terms of its effects and the government alleges that those particular effects were felt in the Western District of Virginia. Specifically, the government sufficiently alleges that Dove and Brown robbed the customers at Ink Junkeez and shot O.J with the purpose of influencing MSB leaders with authority over "maintaining or increasing position[s] in" MSB, and those leaders resided in the Western District of Virginia. Therefore, the court will deny Dove's and Brown's motions to dismiss

13

the § 1959(a) and corresponding § 924(c) charges in Counts Three through Eight for improper venue.[9] The court will also deny Michael Jones' request to sever Counts One and Two from Counts Three through Eight; at this stage, venue is proper for all counts in the Western District.

At trial, the government must prove that Dove and Brown committed the violent crimes with the purpose of influencing MSB leaders who had authority over maintaining or increasing members' positions, and that those MSB leaders resided in this district. Such proof may be offered by direct or circumstantial evidence. Engle, 676 F.3d at 412. If, at the close of evidence, a defendant raises a genuine issue of material fact as to venue, the court will instruct the jury on the government's burden to prove proper venue by a preponderance of evidence. Id.

---

[9] Many courts have rejected defendants' challenges to venue for § 1959(a) offenses by focusing on the close relationship between § 1959(a) and RICO under § 1962. See United States v. Saavedra, 223 F.3d 85, 91 (2d Cir. 2000) (Section "1959 is aimed at those kinds of violent crimes committed as part and parcel of membership in a RICO enterprise."); United States v. Perez, 940 F. Supp. 540, 548 (S.D.N.Y. 1996) (Section 1959(a) "is necessarily closely associated with and an integral aspect of membership in a RICO enterprise."); United States v. Aiken, 76 F. Supp. 2d 1346, 1350 (S.D. Fla. 1999) (same); United States v. Parker, No. 4:14-CR-00141-GHD, 2015 WL 5156239, at *2 (N.D. Miss. Sept. 2, 2015) (suggesting § 1959(a) prosecutions may go forward in any district a RICO conspiracy takes place); United States v. Ramirez Umaña, No. 3:08CR134-RJC, 2010 WL 1141366, at *3 (W.D.N.C. Mar. 18, 2010) ("Where the government actually charges a defendant with a RICO conspiracy under 18 U.S.C. § 1962(d), it is without question proper to charge related § 1959 offenses in the same venue."). The court disagrees with the preceding cases to the extent those courts treated venue for § 1959(a) offenses as coextensive with venue for RICO conspiracies. Unlike a RICO conspiracy, where venue is proper in any district in which a coconspirator commits an overt act in furtherance of the conspiracy, see Hyde v. United States, 225 U.S. 347 (1912), § 1959(a) prosecutions are not governed by the conspiracy venue rules. Indeed, if the government's only allegations of MSB activity in the Western District of Virginia were that low-level gang members conducted affairs in this district, then venue may be proper for Dove's and Brown's § 1962 charges, but improper for the § 1959(a) charges. While the overt acts of low-level members of a conspiracy may satisfy venue for a conspiracy, low-level gang members lack authority over promotion and membership decisions, indicating the effects of the § 1959(a) offenses would not be felt in this district. But where, as here, the government alleges that gang leaders in charge of promotions and membership resided in the present venue, the effects of the conduct proscribed by § 1959(a) were felt in the district, thereby rendering venue proper.

14

## III.

In light the court's denial of his motion to dismiss for improper venue, Brown moves in the alternative to transfer the charges against him in Counts Three, Five, Six, and Eight to the Eastern District of Virginia pursuant to Rule 21(b) for convenience and in the interest of justice. ECF No. 278.[10] Michael Jones and Smith, although not named in Counts Three, Five, Six, and Eight, join in Brown's request to transfer. ECF Nos. 366, 376. All three defendants—Brown, Michael Jones, and Smith—are charged in the RICO and drug conspiracy counts in Counts One and Two, but none of them request transfer of those counts. In short, despite the multiple defendants involved, the only request for transfer before the court is to transfer Brown's § 1959(a) and § 924(c) charges to the Eastern District.

Rule 21(b) provides: "Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). "The decision whether to transfer a case is committed to the sound discretion of the district court." United States v. Heaps, 39 F.3d 479, 482 (4th Cir. 1994), abrogated on other grounds by United States v. Cabrales, 524 U.S. 1 (1998). That discretion is guided by the factors enumerated by the Supreme Court in Platt v. Minnesota Mining & Manufacturing Co., 376 U.S. 240 (1964):

1) location of the defendant;
2) location of witnesses;
3) location of events likely to be in issue;
4) location of documents and records;
5) disruption of defendant's business unless the case is transferred;

---

[10] As noted, Dove moved to withdraw his similar request for transfer at the June 16 hearing.

15

> 6) expense to the parties;
> 7) location of counsel;
> 8) relative accessibility of place of trial;
> 9) docket condition of each district; and
> 10) any other special element that might affect the transfer.

Platt, 376 U.S. at 243-44. "No one of these factors is dispositive, and it remains for the court to try to strike a balance and determine which factors are of greatest importance." United States v. Farkas, 474 F. App'x 349, 353 (4th Cir. 2012) (citations and quotations omitted). "A defendant seeking a change of venue [does not have] the burden of establishing 'truly compelling circumstances' for such a change. It is enough if, all relevant things considered, the case would be better off transferred to another district." Matter of Balsimo, 68 F.3d 185, 187 (7th Cir. 1995).

As an initial matter, Michael Jones' and Smith's motions to transfer must be denied because they request transfer of charges in which they are not named. As counsel for Michael Jones and Smith made clear at the June 16 hearing, they do not seek transfer of the charges against them (Counts One and Two); but rather, Michael Jones and Smith join in Brown's request to transfer the § 1959(a) and § 924(c) charges against Brown. Rule 21(b) allows a defendant to move to transfer "one or more counts, *against that defendant.*" Fed. R. Crim. P. 21(b) (emphasis added). Under the Rule, Michael Jones and Smith lack standing to request a transfer of Counts Three, Five, Six, and Eight.

Brown's motion to transfer, however, requires inquiry under the Platt factors outlined above. The second and third Platt factors (location of possible witnesses and events likely to be at issue) are the only factors that clearly weigh in favor of transferring Counts Three, Five, Six, and Eight to the Eastern District of Virginia. The conduct charged therein

16

occurred exclusively in Norfolk, and presumably, witnesses to that conduct reside in the Eastern District. While trial of these counts, standing alone, would be more at home in Norfolk, the remaining relevant factors militate against transfer.[11]

Specifically, Brown is currently housed in pretrial detention in the Western Regional Jail located in Salem, Virginia, just a few miles from the Roanoke courthouse. Likewise, Brown's counsel resides in Roanoke. The location of the defendant and his counsel indicate that transfer would be inappropriate. Moreover, transferring some but not all of the counts against Brown would result in huge expense to the parties. As Wright and Miller note, "[t]he only situation in which [transferring fewer than all counts] would seem desirable is if a single defendant is charged with various crimes of a similar character but otherwise unrelated, and different witnesses will be needed on different counts." 2 Wright & Miller, Fed. Prac. & Proc. Crim. § 344, at n.9 (4th ed.). No such circumstances exist here. This is a multi-defendant, complex case. Brown's § 1959(a) and § 924(c) charges are directly related to Dove's identical charges. And the evidence relevant to Counts Three, Five, Six, and Eight might also be relevant to the RICO conspiracy charged in Count One. Therefore, granting Brown's transfer motion would result in largely identical adjudicative efforts. The expenses associated with transfer would not be justified. Lastly, the docket conditions in the Western District and Eastern District of Virginia weigh against transfer. This court has set aside six weeks of its calendar in the fall of this year to hear the charges against Brown and his

---

[11] The fourth, fifth, and eighth Platt factor are irrelevant or neutral to this case. The government has provided all discovery in an electronic format and the location of those files is of little consequence. Moreover, Brown is not gainfully employed. And lastly, Roanoke is similarly accessible as any division within the Eastern District. Therefore, the location of documents, potential for the disruption of business, and relative accessibility of the Roanoke courthouse weigh neither in favor nor against transfer.

17

codefendants. No such arrangements exist in the Eastern District. These factors indicate that transfer would be inappropriate and no special circumstances indicate the court should rule otherwise.

In short, Brown's § 1959(a) and § 924(c) charges would not be better off transferred to the Eastern District of Virginia. See Matter of Balsimo, 68 F.3d at 187. Therefore, the court will deny Brown's motion to transfer pursuant to Rule 21(b).

## IV.

For the reasons outlined above, the court denies the motions to dismiss for improper venue as well as the motions to transfer to the Eastern District of Virginia. Each of the defendants in this case will proceed to trial in the Roanoke Division of the Western District of Virginia beginning September 11, 2017.

An appropriate Order will be entered.

Entered: 06/20/2017

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge